IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DWAYNE ANDERSON,                 ) | |
|                                        ) | |
|     Plaintiff,                   ) | |
|                                        ) | |
| v.                                          ) | No. 2:22-cv-02523-TLP-atc |
|                                        ) | |
| METRO BY T-MOBILE, T-MOBILE     ) | |
| and its AFFILIATES, and AMERICAN   ) | |
| ARBITRATION ASSOCIATION,          ) | |
|                                      ) | |
|     Defendants.                ) | |

**REPORT AND RECOMMENDATION FOR *SUA SPONTE* DISMISSAL**

On August 10, 2022, Plaintiff Dwayne Anderson filed a *pro se* complaint against Defendants Metro by T-Mobile, T-Mobile, and its affiliates (collectively, "Metro") and the American Arbitration Association ("AAA"), alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Tennessee Consumer Protection Act ("TCPA"), and common law fraud. Also on August 10, 2022, Anderson filed a motion to proceed *in forma pauperis* (ECF No. 2), which was subsequently granted (ECF No. 6). This case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate. (Admin. Order 2013-05, Apr. 29, 2013.)

For the reasons set forth below, it is recommended that Anderson's claims be dismissed *sua sponte*, pursuant to 28 U.S.C. § 1915(e)(2)(B), for failure to state a claim upon which relief may be granted.

## **PROPOSED FINDINGS OF FACT**

Anderson alleges that Metro fraudulently charged him fees higher than his contracts allowed on two occasions in May 2022. On May 8, 2022, Anderson contends that an employee at the Metro store on Cleveland Avenue in Memphis, Tennessee, overcharged him $4.00 on his monthly phone bill. (ECF No. 1, at 2.) Anderson contends that his monthly data plan costs $60.00 per month, but the employee allegedly refused to examine the data plan prior to the transaction. Anderson was not given a paper receipt noting the $64.00 account payment. Instead, he received a text from customer care thanking him for a $60.00 payment to his account. (*Id*.)

On May 30, 2022, Anderson alleges that his phone was stolen. (*Id*.) The next day, he went to the Metro store to report his stolen phone and to obtain a replacement. (*Id*.) Metro employees acknowledged that Anderson had insurance that covered the stolen phone for a $65.00 deductible fee. (*Id*.) Without attaching or citing the insurance contract, Anderson contends that this deductible fee was not required under his insurance agreement, and he alleges that the employees refused to provide documentation to justify the fee. (*Id*.) They also purportedly refused to provide a receipt reflecting that the deductible had been paid. Upon receiving his new phone, Anderson received a text stating, "Thanks for your $13.71 payment on Acc 831071976; Conf 471577187; Payment posted on 05/30/22 10:14a." (*Id*.) Anderson argues that the employees' actions on both occasions constitute fraud on behalf of Metro.

Metro's customer contracts contain a "binding Arbitration clause," which requires that customers will proceed with arbitration before the AAA for any claim they have against Metro. (*Id*. at 3.) Anderson therefore filed a Consumer Complaint for Damages against Metro with the AAA on May 16, 2022, styled *Dwayne Anderson v. Metro by T-Mobile, T-Mobile, and its*

2

*Affiliates*, No. 01-22-0002-2867. On June 27, 2022, he received an email from the Pro Se Administrator on behalf of Pro Se Manager 5 of the AAA. The administrator asked Anderson to advise when he was ready to proceed with appointing an arbitrator. (ECF No. 1, at 3.) The email also encouraged Anderson to attempt to settle the claim before proceeding. (*Id.*) Anderson communicated with Defendants' attorneys twice via email regarding the possibility of settlement. (*Id.*) On July 18, 2022, Anderson notified Pro Se Manager 5 via email that the settlement discussions were unsuccessful and Defendants' attorneys were no longer replying. (*Id.*) Less than a month later, Anderson filed this case on August 10, 2022, after Pro Se Manager 5 had not yet replied to Anderson's July 18th email and the AAA had not yet appointed an arbitrator to his matter.

Anderson alleges that Metro and T-Mobile committed fraud in violation of RICO and engaged in unfair and deceptive business practices in violation of the TCPA. (*Id.*) He also alleges that the AAA "conspired with [Metro and T-Mobile] to prevent [him] from proceeding with arbitration" and thus violated RICO and the TCPA as well. (*Id.*) Anderson seeks $10,000,000 in compensatory damages and $10,000,000 in punitive damages. (*Id.* at 4.)

## PROPOSED CONCLUSIONS OF LAW

### I.   28 U.S.C. § 1915(e)(2) Screening

Under Local Rule 4.1(b)(2), the Clerk of the Court will only issue summonses in cases with non-prisoner *pro se* plaintiffs who are proceeding *in forma pauperis* at the Court's direction after the Court conducts a screening under § 1915(e)(2)(B). Under that provision, the Court shall dismiss the case at any time if it determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

who is immune from such relief." This Report and Recommendation constitutes the Court's screening.

## II.     Standard of Review for Failure to State a Claim

To determine whether Plaintiff's complaint states a claim for which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief. *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012).

Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded"). Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs., L.P.*, No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011)).

### III. Anderson's Claims Against the AAA

Anderson's claims against the AAA are barred by arbitral immunity. Under the longstanding and related policy of judicial immunity, judges are not subject to civil liability for actions carried out in performing their judicial duties. *Bradley v. Fisher*, 80 U.S. 335, 347

5

(1871). Judicial immunity applies even when a judge is accused of acting "maliciously or corruptly," and immunity is forfeited only when a judge acts in "the clear absence of all jurisdiction over the subject-matter." *Id.* at 336; *see also Anders v. Purifoy*, No. 2:16-cv-02321-JDT-tmp, 2016 WL 11479290, at *3 (W.D. Tenn. May 18, 2016), *report and recommendation adopted*, 2016 WL 3102229 (W.D. Tenn. June 2, 2016) ("A judge is immune from suits for money damages unless: (1) the judge's actions were non-judicial; or (2) the judge performed the actions in the complete absence of all jurisdiction.") (citations omitted).

"[T]he federal courts have accorded quasi-immunity to various other public officials who are entitled to the same type of immunity from liability for those acts performed while acting in their official capacities." *Int'l Union, United Auto., Aerospace, and Agric. v. Greyhound Lines, Inc.*, 701 F.2d 1181, 1185 (6th Cir. 1983). And in the case of an official performing "quasi-judicial functions or . . . those whose powers and purpose are 'functionally comparable' to that of a judge," absolute immunity from civil suits is afforded. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 98 (1977)).

An arbitrator's purpose is "functionally comparable to a judge and, consequently, he is clothed with an immunity that is analogous to judicial immunity. Therefore, arbitrators have been deemed protected from civil suit under the doctrine of 'arbitral immunity.'" *Id.* (quotations and citations omitted). Arbitral immunity "protect[s] decisionmakers from undue influence and the decisionmaking process from attack by dissatisfied litigants." *R.D. Herbert & Sons Co. v. Loc. Union No. 177*, No. 3:06-cv-0826, 2006 WL 3230808, at *2 (M.D. Tenn. Nov. 3, 2006) (citing *Olson v. Nat'l Ass'n of Sec. Dealers*, 85 F.3d 381, 382 (8th Cir. 1996)).

Arbitral immunity shields the arbitrator as well as the organization sponsoring arbitration. *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1211 (6th Cir. 1982). The AAA is one such

sponsoring organization. *See, e.g.*, *New England Cleaning Servs., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542 (1st Cir. 1999) (holding that the AAA's decision to process an arbitration proceeding was protected by arbitral immunity); *Royse v. Corhart Refractories Co.*, No. 08-21-C, 2008 WL 4911117, at *2 (W.D. Ky. Nov. 13, 2008), *as amended* (Nov. 14, 2008) ("The AAA is clearly a board that sponsors arbitrations" and "is therefore immune from civil liability, and all claims against the AAA should be dismissed."); *Byrd v. Am. Arb. Ass'n*, No. 2:12-cv-00638, 2013 WL 1282431, at *6 (S.D. Ohio Mar. 27, 2013) (holding that the AAA is an arbitration-sponsoring board entitled to absolute arbitral immunity). Arbitral immunity extends to claims against sponsoring organizations relating to arbitration procedures, including those brought under RICO. *See Buhannic v. Am. Arb. Ass'n*, No. 18 Civ. 2430, 2019 WL 4735005, at *5 (S.D.N.Y. Sept. 27, 2019) (dismissing RICO claims against the AAA of conspiring with codefendants in the selection of arbitrators) (collecting cases).

Anderson's claims against the AAA under RICO and the TCPA are based on the AAA's failure to appoint an arbitrator within twenty-two days of his most recent email to Pro Se Manager 5. (ECF No. 1, at 3.) "A sponsoring organization's immunity extends to the administrative tasks it performs, insofar as these are integrally related to the arbitration." *R.D. Herbert*, 2006 WL 3230808, at *2 (citing *New England Cleaning*, 199 F.3d at 545). Here, the processing of Anderson's arbitration claim and the timing and procedure of appointing an arbitrator are administrative tasks integrally related to arbitration. As such, the AAA is protected from civil liability on the basis of absolute arbitral immunity. Anderson's claims against the AAA should be dismissed with prejudice.

## IV. Anderson's RICO Claim Against Metro

Section 1964(c) of RICO authorizes civil suits and provides in pertinent part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c). Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To establish a violation of § 1962, a plaintiff must show: "(1) there were two or more predicate offenses; (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to [his or her] business or property by reason of the above." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1385 (6th Cir. 1993) (citing *Beneficial Standard Life Ins. Co. v. Madariaga*, 851 F.2d 271, 274 n.5 (9th Cir. 1988)).

In this case, Anderson alleges that Metro and T-Mobile fraudulently charged him $4.00 in fees higher than his contract allowed on one occasion and an apparently unrelated $65.00 insurance deductible for a replacement phone approximately three weeks later. Even if these allegations satisfy the two-or-more-predicate-offense requirement, "it is axiomatic that a civil RICO claim alleging racketeering activity with a single objective and a single victim is not sufficient to establish a pattern of racketeering activity, as it does not sufficiently evidence long-term criminal conduct." *Moses v. Gardner*, No. 2:14-cv-2706-SHL-dkv, 2017 WL 1364977, *5 (W.D. Tenn. Apr. 12, 2017) (quoting *Vemco, Inc. v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1995) ("We cannot conclude that [the plaintiff's] alleged actions here, involving a single victim

8

and a single scheme for a single purpose over seventeen months, constitute the type of 'long-term criminal conduct' Congress sought to prohibit with RICO.")).  All the alleged wrongdoing identified by Anderson was directed only at him, and the only objective alleged was to charge him fees not permitted under his contract on two apparently unrelated and isolated occasions in May 2022.  (ECF No. 1, at 1–2.)  Anderson's allegations involving "a single objective and a single victim are not sufficient to establish a pattern of racketeering activity, as they do not sufficiently evidence long-term criminal conduct."  *Clair v. Bank of Am., N.A.*, No. 2:16-cv-02263-SHL-dkv, 2016 WL 6092715, at *6 (W.D. Tenn. Oct. 19, 2016) (adopting a report and recommendation and dismissing on this basis under § 1915(e)(2)).  As a result, Anderson's RICO claims should be dismissed.

In addition, in his alleged causes of action, Anderson summarily states that "AAA had conspired with [Metro] to prevent me from proceeding with arbitration against [Metro]."  (ECF No. 1, at 3.)  However, the Complaint is devoid of any factual allegations of conspiratorial conduct between AAA and Metro.  In fact, other than one AAA letter that was sent to both Anderson and Metro, Anderson does not allege any direct communications or interactions between the Defendants.  Anderson has thus failed to allege any facts supporting a predicate offense, much less the required two-or-more predicate offenses.  It is therefore recommended that Anderson's RICO claims be dismissed with prejudice.

**V.    Anderson's State Law Claims**

Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise supplemental jurisdiction over claims if it has dismissed all claims over which it has original subject matter jurisdiction.  *Moses*, 2016 WL 11249025, at *16; *see also Brooks v. Rothe*, 577 F.3d 701, 709

9

(6th Cir. 2009) ("If the federal claims are dismissed before trial, the state claims generally should be dismissed as well.") (quoting *Wojnicz v. Davis*, 80 F. App'x 382, 384–85 (6th Cir. 2003)).

In this case, the Court only has original subject matter jurisdiction over Anderson's RICO claims, and he fails to allege any jurisdictional basis over his state law claims for common law fraud and violations of the TCPA. Because this Court recommends dismissal of Anderson's RICO claims, it is further recommended that the Court decline to exercise supplemental jurisdiction over his state law claims. *See Tallent v. Knight*, No. 22-5126, 2022 WL 18862074, at *2 (6th Cir. Sep. 7, 2022) ("The district court declined to exercise supplemental jurisdiction over the [plaintiff's] state-law claims, reasoning that they were subject to dismissal because all of her federal claims were dismissed. If a district court dismisses a plaintiff's federal claims, it is not required to exercise jurisdiction over her state-law claims.") (citations omitted).

## RECOMMENDATION

For the foregoing reasons, the Court recommends that Anderson's claims against the AAA be dismissed with prejudice pursuant to § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted on the basis of arbitral immunity. It is further recommended that Anderson's RICO claims against all Defendants be dismissed with prejudice for failure to state a claim upon which relief may be granted. It is further recommended that the Court decline to exercise supplemental jurisdiction over Anderson's state law claims against Metro and that they be dismissed without prejudice.

Respectfully submitted this 11th day of December, 2023.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver of objections, exceptions, and further appeal.

Case 2:22-cv-02523-TLP-atc   Document 8   Filed 12/11/23   Page 11 of 11
PageID 36